IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JEFF BROWN and SHERRI GOTHIER, Individually and as Co-Special Administrators of the Estate of KB, Deceased,<br><br>    Plaintiffs,<br><br>vs.<br><br>PROVIDENCE MEDICAL CENTER (Wayne, Nebraska), MERCY MEDICAL SERVICES, MERCY HEALTH SERVICES – Iowa, Corp., MERCY MEDICAL CENTER – Sioux City,<br><br>    Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | CASE NO.:<br><br><br><br><br><br><br><br>**COMPLAINT**<br>**AND**<br>**JURY DEMAND** |

## PRELIMINARY STATEMENT

1.      This is a civil action involving the death of a 9-year-old child. On January 24, 2010, the child is in an unstable condition at the emergency department of Providence Medical Center.  Without stabilizing **KB**, Defendants transfer her to Mercy Medical Center (Sioux City, Iowa).  The

transfer is during a blizzard.  During the transfer her condition deteriorates, she codes, becomes unconscious and experiences brain death.

## JURISDICTION/VENUE

2.  This Court has jurisdiction pursuant to 28 *U.S.C.* §1331 because of the federal question presented by 42 *U.S.C.* §1395dd ("EMTALA").  This Court also has supplemental jurisdiction pursuant to 28 *U.S.C.* §1367 because all of the claims are part of the same case or controversy.  As to Defendants MERCY MEDICAL SERVICES, MERCY HEALTH SERVICES – Iowa Corp., and MERCY MEDICAL CENTER – Sioux City, based on diversity pursuant to 28 *U.S.C.* §1332.

## IDENTIFICATION

3.  JEFF BROWN (hereinafter referred to as **Dad**) and SHERRI GOTHIER (hereinafter referred to as **Mom**) are citizens and residents of Laurel, Nebraska.  They are the father and mother of KB, deceased; they are Co-Special Administrators of KB's Estate.

4.  KB (hereinafter referred to as **KB** or **the child**) dies on January 27, 2010.  She is 9 years old at the time of her death.

5.  PROVIDENCE MEDICAL CENTER (hereinafter referred to as **PMC**) is a "covered hospital" as defined by 42 *U.S.C.* §1395dd(e)(2) and is subject to the provisions of EMTALA.  **PMC** is located at 1200 Providence Road, Wayne, Nebraska.

6.  **PMC** offers to the public a "dedicated emergency department", which provides emergency medical services through its employees, agents, staff, and/or servants.  At all times, **PMC** is responsible for the acts and omissions of its employees, agents, staff, and/or servants as set forth hereafter.

7.  **PMC** is a "Critical Access Hospital" pursuant to *Neb. R.R.S.* §71-409 and 175 *N.A.C.* [Nebraska Administrative Code] §9-006.10, and is required to provide those services set forth in 175 *N.A.C.* §§9-006.06 and 9-006.09I, as well as 42 *C.F.R.* 485.601 to 485.641.

8.  MERCY MEDICAL SERVICES has been identified as a department of MERCY HEALTH SERVICES – Iowa, Corp., a Delaware Corporation, d/b/a MERCY MEDICAL CENTER – Sioux City.  (Hereinafter these Defendants are collectively referred to as **MMS**.)  The citizenship of these entities, for purposes of federal diversity jurisdiction, is outside the State of Nebraska.

9.  **MMS** is a medical staff contractor that provides doctors to hospitals and clinics in Iowa and Nebraska.  **MMS** has a contract with **PMC** to provide emergency medical specialists doctors for its "dedicated emergency department" and as a "Critical Access Hospital".

10.  The emergency room doctor working on January 24, 2010, as referred to below (hereinafter "*E.R. doctor*"), is a contract employee of

3

**MMS;** and an agent/servant of **PMS**.  The actions and omissions of the ***E.R. doctor*** are imputed to **PMC** and **MMS**.

11. **Iowa Mercy Medical Center** (hereinafter **Iowa Mercy**) is a hospital located at 801 5th Street, Sioux City, Iowa.

12. **Children's Hospital and Medical Center** (hereinafter **Children's Hospital**) is located at 8200 Dodge Street, Omaha Nebraska.

### NEBRASKA HOSPITAL-MEDICAL LIABILITY ACT

13. The PLAINTIFFS believe that DEFENDANTS may have elected to qualify as health care providers under the terms and provisions of the Nebraska Hospital-Medical Liability Act, Neb. R.R.S. §§44-2801 *et. seq.* ("the Act"), and they were so qualified on the date of **KB**'s injuries and death.

14. PLAINTIFFS hereby affirmatively waive any rights for a medical review panel to review the claims herein against DEFENDANTS as provided by the Act, and elect to file this action directly in the United States District Court for the District of Nebraska.

15. Copies of this Complaint are being served by certified U.S. Mail on:  Director of the Nebraska Department of Insurance, Attorney General of Nebraska, and Michael Davlin as Administrator of the Nebraska Hospital-Medical Liability fund.

## FACTS

16. On January 18, 2010 **KB** has surgery at **PMC** for the removal of her tonsils and adenoids. Later that day, after her condition is stabilized, **the child** is discharged home.

17. On January 22, 2010 **KB** returns to the emergency room at **PMC** for treatment of post-operative bleeding in her throat.

18. While **KB** is in the emergency room, the bleeding stops. She is admitted to **PMC** for stabilization, observation, and treatment. The next day (January 23rd) her condition is stable; **the child** is released home.

19. On January 24, 2010 at 7:04 p.m., the emergency ambulance team for Laurel, Nebraska is called. **KB** is bleeding again. An ambulance is dispatched to transport **the child** from her home to **PMC**. **Mom** rides in the ambulance with **KB**, holding **the child's** hand.

20. The distance from **the child's** home to **PMC** is approximately 16 miles; travel time is 20 minutes. A snowstorm – blizzard makes the travel slow; the road is partially snow blocked and icy; the visibility poor.

21. At 7:57 p.m. **KB** arrives at the Emergency Department at **PMC.** At **PMC**, **KB's** condition is unstable: she requires immediate triage, her blood pressure and hemoglobin are low; she reports pain and bleeding in her throat. She has been gagging on large blood clots.

22. At 8:00 p.m. the *E.R. doctor*, without seeing **KB**, orders her transfer to **Iowa Mercy**.

5

23. At 8:10 p.m. the **E.R. doctor** sees **KB**, and notes postoperative bleeding and anemia due to blood loss.

24. At 8:15 p.m., without providing any additional treatment to stabilize **KB**, the **E.R. doctor** again orders the transfer of **KB** to **Iowa Mercy**.

25. At 8:35 p.m., without treatment to stabilize her medical condition, **KB** is sent out from **PMC** to **Iowa Mercy**.

26. En route to **Iowa Mercy** in the ambulance **KB's** condition deteriorates, she "codes" and CPR is initiated.

27. At 10:08 p.m. **Iowa Mercy** admits **KB**. Doctors determine there is brain injury.

28. On January 26, 2010 **KB** is transferred to **Children's**.

29. On January 27, 2010 at 1:58 p.m. **KB** is pronounced dead.

## COUNT I – EMTALA VIOLATION - PMC

30. At all relevant times **PMC** is a "participating hospital" as defined in 42 *U.S.C.* §1395dd(e)(2). The **E.R. doctor** is a physician as identified in 42 *U.S.C.* §1395dd(d)(B). Thus, the emergency medical care provided by **PMC** is within the scope and guidelines of EMTALA.

31. On January 24, 2010 **PMC** has the staff and facilities necessary to ensure **KB's** condition will not materially deteriorate during her transfer to **Iowa Mercy**.

6

32. On January 24, 2010, **PMC** fails to determine the source of the bleeding, provide blood infusions to stabilize blood pressure and hemoglobin, and/or admit **the child** for observation and stabilization as was done on January 22, 2010.

33. On January 24, 2010 **PMC** fails to provide emergency medical care within the scope and guidelines of EMTALA. Contrary to 42 *U.S.C.* §1395dd(b)(1) it fails to stabilize **KB**.

34. The transfer of **the child** violates 42 *U.S.C.* §1395dd(c)(1) & (2). It is not an appropriate transfer because **PMC** chose not to provide medical treatment within its capacity to minimize the risks, nor did it effect the transfer through qualified personnel and appropriate equipment. As a result, **the child's** condition deteriorates and she codes. There is injury to her brain and she dies.

## COUNT II – MEDICAL NEGLIGENCE

35. PLAINTIFFS allege that DEFENDANTS, individually and/or through the actions of their employees, agents, staff, and/or servants, did not meet the applicable standard of care:

    a. In failing to properly assess **KB**'s condition on January 24, 2010;

    b. In failing to provide adequate or necessary medical care to **KB** on January 24, 2010; and

    c.    In putting **KB** in an ambulance for a trip to **Iowa Mercy** when it was unsafe due to her medical condition and the conditions then and there existing.

36.    **KB's** condition deteriorates, and she dies as a proximate result of DEFENDANTS actions and inactions.

## COUNT III – CORPORATE LIABILITY

37.    **PMC** and **MMS** were negligent in failing to protect **the child** from negligent treatment by their employees, agents and staff on January 24, 2010.

38.    **PMC** and **MMS** failed to promulgate and enforce policies or procedures to ensure the delivery of appropriate emergency medical care for their patients.

39.    As a direct and proximate result of **PMC**'s and **MMS**'s negligence, acts, and/or omissions, **KB** suffers and dies.

## COUNT IV – VICARIOUS LIABILITY

40.    The E.R. doctor and other healthcare providers for **KB** were employees, agents and/or servants of **PMC** and/or **MMS,** acting within the scope of their employment at all times relevant hereto.

41.    **PMC** and/or **MMS** are at all relevant times vicariously responsible for the acts of their agents and servants, including, but not limited to, the acts of the E.R. doctor.

## INJURIES AND DAMAGES

42. As a direct and proximate result of DEFENDANTS' acts and omissions as set forth above, **KB** dies.

43. As a direct and proximate result of the acts and omissions set forth in Counts I, II, III, and IV, PLAINTIFFS seek damages to include funeral and burial expenses ($11,351.00), medical and hospital expenses ($77,662.00), and **KB's** pre-death physical and mental pain and suffering.

44. Due to **KB's** tragic death, **Mom** and **Dad** are deprived of all the experiences of parenting their daughter, and the relationship they would have had with her throughout their lives, including, but not limited to, the loss of society, comfort, care, and companionship.

45. **Mom** and **Dad** suffered, and continue to suffer, emotional distress. In particular, **Mom** sees her child's condition deteriorate in the ambulance. From **KB's** admission to **Iowa Mercy**, until her death at **Children's Hospital** on January 27, 2010, **Mom** and **Dad** suffer seeing **KB** in a coma, and learning that she is brain dead, with no chance of recovery. Their emotional distress includes the decision to cease all life support.

## JURY DEMAND

46. Pursuant to Rule 38(b) of the *Federal Rules of Civil Procedure*, PLAINTIFFS demand a trial by jury on any and all issues related to this case in Omaha, Nebraska.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFFS pray for judgment against DEFENDANTS as follows:

47. Judgment for special damages.

48. Judgment against DEFENDANTS for compensatory damages in accordance with the laws of the State of Nebraska that will fairly and adequately, but not excessively, compensate for their loss.

49. Judgment against **PMC** for all damages available under EMTALA.

DATED this 20th day of January, 2012.

        JEFF BROWN, and SHERRI GOTHIER,
        Individually and as Co-Special Administrators
        of the Estate of KB, Deceased,
        Plaintiffs,

        By:    s/Ronald J. Palagi
               RONALD J. PALAGI, #13206
               FOR THE LAW OFFICES OF
               RONALD J. PALAGI, P.C.
               3131 South 72nd Street
               Omaha, Nebraska  68124
               (402) 397-5000

        Attorneys for Plaintiff